**Bernard F. CURRY and Marvel I. Curry, Appellants,**

v.

**UNITED STATES of America, Appellee.**

**No. 25336.**

United States Court of Appeals Fifth Circuit.

June 21, 1968.

---

Sidney A. Soltz, Miami, Fla., for appellants.

Richard C. Pugh, Acting Asst. Atty. Gen., Lee A. Jackson, William A. Friedlander, Frank X. Grossi, Jr., Attys., Dept. of Justice, Washington, D. C., William A. Meadows, Jr., U. S. Atty., Miami, Fla., Mitchell Rogovin, Asst. Atty. Gen., Washington, D. C., for appellee; Robert L. Steuer, Asst. U. S. Atty., of counsel.

Before JOHN R. BROWN, Chief Judge, DYER, Circuit Judge, and GARZA, District Judge.

GARZA, District Judge:

Appellant in the district court was seeking from the United States a refund of certain income taxes paid for the years 1958–1961 in the amount of $142,953.60.

Appellant was required to pay this amount as a deficiency assessment because the Internal Revenue Service disallowed certain business losses claimed by Appellant.

From an adverse ruling, the Appellant brought this appeal.

The essential background is as follows:

Appellant is a well-known and lifetime figure in virtually all aspects of the automobile business excluding production. He operates in New York and Florida. Most of these operations are conducted through controlled corporations.

In 1956, Appellant entered into a stock purchase contract with one Olin W. Harbett, hereinafter known as "Harbett". Through this contract, Appellant acquired one-half of the stock in seven Florida corporations. Appellant's transactions with two of these corporations, Olin's, Inc. (hereinafter designated as "Olin's") and Olin's Airport U-Drive-It, Inc. (hereinafter designated as "Airport"), are the subject of this lawsuit.

Both of these corporations were involved in car rentals and have been in business since 1941.

Appellant had previously been an investor in these two corporations, but had sold out prior to the stock purchase agreement with Harbett.

Before the stock purchase contract, another company was about to take control of the corporations from Harbett, in furtherance of which a loan of $150,-000.00 had been made to Harbett. On the date of the stock purchase contract in question, the Appellant also acquired this loan. Appellant also purchased two pledge agreements previously made between Harbett and two third-party lenders.

The 1956 stock purchase contract recites only a nominal consideration of Ten Dollars, but the evidence revealed that the Appellant acquired the stock in the corporation for $50,000.00. Appellant also promised to personally advance to the corporations the sum of $200,000.-00, and promised to secure other lines of credit. These considerations were the basis for the Appellant's right to participate in the management of the corporations. In 1960 the Appellant acquired the remaining fifty per cent of the capital stock in Airport and Olin's for no consideration.

In 1956 Appellant personally advanced $100,000.00 on two occasions to Olin's, receiving in exchange on each occasion a demand note from Olin's for $100,000.00. The first note was unsecured and non-interest bearing. The original stock purchase contract provided for six per cent per annum interest, but this provision was stricken from the agreement at the time it was executed. The second $100,000.00 note did carry six per cent per annum interest, but was unsecured. A rider was later attached to this note, whereby Olin's assigned its Accounts Receivable as collateral for the advance.

In 1958, Appellant advanced an additional $75,000.00, giving a total of $275,000.00 advanced.

Olin's repaid $125,000.00 in 1960, leaving a balance of $150,000.00.

In 1961, Olin's borrowed an additional $200,000.00 from a bank on Appellant's guaranty. Later in 1961 Olin's defaulted on this note and Appellant repaid the principal and interest for a total of $202,527.78.

In 1958 Appellant opened and guaranteed a $250,000.00 unsecured line of credit for Airport from a local bank. In 1959 Airport repaid the bank $150,000.-00, but because of financial difficulties could not pay the rest. Appellant advanced Airport $100,000.00 to pay off this note.

Also, during 1958 Appellant made other advances to Airport, $25,000.00 of which was never repaid. Appellant's net

total uncollectible advances to Airport aggregate $125,000.00.

It is undisputed that these companies, because of their financial problems, were only able to borrow money from lending institutions, based upon Appellant's guaranty.

During the years 1956 through 1961, Appellant, as an employee of these two corporations and as an insurance broker, received approximately $90,000.00 in salaries and insurance commissions.

Appellant's purpose in making the advancements and guaranty payments to and on behalf of the corporations was to provide operating capital which was necessary to continue their operations.

Appellant claimed that this was extremely necessary because his automobile financial empire consisted of these two corporations plus many others. He reasoned that the failure of any one would adversely affect all of his corporations because he operated on a large personal line of credit. Appellant contended that once he got into the situation, he had to continue through fear of his empire collapsing.

The amount of bad debts sustained by the taxpayer in 1961 is undisputed. The main item in dispute is whether these are business or non-business bad debts, or short term capital loss.

Appellant contends that the advances and guaranty payments in question were business bad debts and deductible as such in the year of their worthlessness.

The district court, based upon the above facts, concluded that the advances and guaranty payments made by the Appellant to and on behalf of the corporations were contributions to capital and not indebtedness.

As an alternative holding, the district court decided that even if these advances and guaranty payments were indebtedness, they were deductible only as non-business bad debts because they were not closely enough connected to Appellant's business.

Another minor issue in this case concerns alleged deductions for travel and entertainment expenses of Appellant for the years 1959 through 1961. The Government disallowed most of these deductions for Appellant's inability to substantiate them.

The district court found that the 1961 deductions were substantiated, and allowed them, but did not allow the deductions for 1959 and 1960 because they were not substantiated.

Appellant is attempting to deduct his losses as an ordinary expense based upon the assertion that his losses are business bad debts connected with his business. Sec. 162, Internal Revenue Code of 1954.

Appellant has the burden of proving that he is entitled to these deductions as a basis for claiming the refunds. United States v. Byck, 325 F.2d 551 (5 Cir., 1963).

This Court agrees with the district court. The Appellant has not met his burden.

If repayment of an advance is contingent upon the success of the business, the advancement is usually considered a contribution to capital; conversely if an advance creates unconditional obligations to pay a sum certain on a set date, it is normally considered a debt. United States v. Henderson, 375 F.2d 36 (5 Cir., 1967); Tomlinson v. 1661 Corp., 377 F.2d 291 (5 Cir., 1967).

Often, however, numerous factors enter to make the picture cloudy. The same transaction will give the appearance of both a capital contribution and a loan.

This Court on numerous occasions has had the opportunity to set down distinguishing criteria as a guideline for making such distinctions. Tomlinson v. 1661 Corp., supra; United States v. Henderson, supra; Montclair, Inc. v. Commissioner of Internal Revenue, 318 F.2d 38 (5 Cir., 1963).

Each case involving the capital versus debt distinction "must be judged

on its own unique fact situation." Tomlinson v. 1661 Corp., supra.

Looking at the entire record, it is obvious that the pendulum swings in this case in the direction of a capital contribution.

The fact that the advancements were evidenced by debt instruments and the Appellant's testimony that the parties intended to create an indebtedness point to a conclusion of a debt. Juxtaposed, however, are the following facts:

You cannot separate the advancements from the stock transfers. Appellant was actually buying the corporation.

At first he received fifty per cent of the stock, and later one hundred per cent. His managerial rights resulted from his making the advancements.

The corporations were in desperate financial straits. It is undisputed that no outside lending institution would loan them money without Appellant's guaranty. This factor is indicative of a capital contribution, because a true lender is concerned with interest. Appellant showed very little concern over the interest.

This being a highly risky business, a true lender would demand a high rate of interest. Only one of the notes in question made any provision for interest whatsoever. The only note bearing interest provided for a six per cent rate which is a rather low interest rate considering the risk involved. Only a portion of the interest on this note was ever paid. It is clear that the Appellant was not seriously expecting any substantial interest income, but was interested in the future earnings of the corporation or the increased market value of his interest.

Another interesting factor which points towards a contribution to capital conclusion, is the fact that only one of the notes had a definite maturity date. As mentioned earlier, one of the normal requisites of a true debt situation is that a sum certain will be paid on a particular day. The only note that had a definite maturity date was paid approximately two years after said date with moneys advanced by the Appellant himself.

It is also important to note that these corporations were extremely under-capitalized to the point that in 1958 the corporate debts exceeded paid in capital. By 1961, the year of the asserted bad debt deduction, the deficits were four or five times the paid in capital. In fact by that time the Appellant's advances constituted virtually all the working capital.

■ While thin capitalization will not alone justify designated indebtedness as capital (Rowan v. United States, 219 F.2d 51, 5 Cir., 1955), it is very strong evidence of such a finding, especially when many other factors point in that direction.

■ After reviewing the entire record, this Court agrees with the district court in concluding that the Appellant has failed to carry his burden of proving that the advances were truly loans rather than contributions to capital.

Therefore, Appellant, having made contributions to capital, should be and will be allowed only a capital loss.

This Court having decided that the advances made by Appellant were contributions to capital, it is unnecessary for this Court to pass on the question of business or nonbusiness bad debts.

The final issue in this case concerns the deductibility of certain travel and entertainment expenses for the taxable years 1959 and 1960.

■ Section 6001, Internal Revenue Code of 1954, requires that these deductions be substantiated by records. The Appellant has not substantiated these alleged deductions, and they will not be allowed. Williams v. United States, 245 F.2d 559 (5 Cir., 1957).

The decision of the district court is, therefore,

Affirmed.