CARROLL CUTLER, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Cutler v. Commissioner
Docket No. 28701-84
United States Tax Court
T.C. Memo 1994-90; 1994 Tax Ct. Memo LEXIS 91; 67 T.C.M. (CCH) 2295; February 28, 1994, Filed *91 For petitioner: Thomas E. Redding and Charles B. Koerth. For respondent: Lillian D. Brigman. FAY
FAY
MEMORANDUM FINDINGS OF FACT AND OPINION FAY, Judge: Respondent determined deficiencies in Federal income tax and additions to tax under section 6651(a)(1) [1] for petitioner and his then spouse [2] as follows: Addition to tax Year
Deficiency
Sec. 6651(a)(1)
1979
$  21,907.09
$ 5,476.77
1980
353,493.60
-0-  1981
238,751.03
-0-  After concessions by the parties, the remaining issue as stipulated is whether petitioner is entitled to a bad debt deduction in the amount of $ 10,000 in 1981. [3]
*92 FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and attached exhibits are incorporated herein by reference. Petitioner resided in Houston, Texas, when the petition was filed. In 1981, petitioner was retired. Gregory Greenwell, petitioner's C.P.A., introduced him to Paula Martin and Nellie Miller, who had worked together in an executive search firm and wanted to start their own executive search business. On January 26, 1981, articles of incorporation of Martin, Miller, and Associates, Inc. (the corporation), organized to provide personnel employment services, were filed with the Office of the Secretary of State of Texas. The articles of incorporation state that the shareholders of the corporation are Ms. Martin and Ms. Miller. Ms. Miller was president, Ms. Martin was vice president, Mr. Greenwell was treasurer, and petitioner was an officer of the corporation. Petitioner furnished $ 10,000 in the form of a check [4] as "start-up money" for the corporation. Mr. Greenwell prepared an instrument providing as follows: February 1, 1981 NOTE
$ 10,000.00 Houston, Harris County, Texas
FOR VALUE RECEIVED, Martin, Miller *93 & Associates, Inc. promises to pay to the order of Carroll Cutler at Houston, Harris County, Texas, or at such other place in the State of Texas as any holder of this note may designate in writing, the sum of $ 10,000.00 without any interest thereon. This note, together with all interest due thereon, is due and payable as follows: No payment shall be due before August 1, 1981. After January 1, 1982, this note is payable in twelve equal monthly installments of $ 833.33, such payments to commence upon the written demand of Carroll Cutler. The maker shall have the right to prepay the principal hereof in whole or in part prior to its due date without premium or penalty. If this note is placed in an attorney's hands for collection, or collected by a suit or through a bankruptcy or probate or any court, either before or after maturity, then in any of said events there shall be paid to the holder of this note *94 reasonable attorney's fees and all costs and other expenses incurred by said holder in enforcing the terms of this note.
The note [5] bears Ms. Martin's name as vice president and signatory on behalf of the corporation. Mr. Greenwell, not petitioner, kept the note, canceled check, and other records relating to this transaction. This note was unsecured and was not guaranteed by Ms. Martin or Ms. Miller. Petitioner did not examine the books and records of the corporation and was not sure if he reviewed the corporate bylaws, but he did review some pro forma financial statements. He did not review any credit reports of Ms. Martin or Ms. Miller. He did not ask for a loan application or inquire about whether the corporation could borrow the amount from a financial institution. Petitioner testified that he understood that the source of the funds for repayment was income or profits of the corporation and *95 that "other creditors' would be paid first if the corporation could not pay all of its debts. Petitioner also testified that there were no side agreements with Ms. Martin regarding the note. Petitioner testified that, on February 1, 1981, the net worth of the corporation equaled the $ 10,000, which he "put * * * in". Petitioner began dating Ms. Martin in February 1981; she was his girlfriend. He gave Ms. Martin a Gucci watch and the use of a gasoline credit card with his name on it. For about 2 months, petitioner worked at most 2 to 3 hours a day for the corporation; petitioner's responsibilities included advertising and hiring and training personnel. The corporation made payments on a loan secured by petitioner's car. Within 2 months of making the investment, petitioner first felt that the note might not be repaid. Pursuant to advice from Mr. Greenwell, *96 petitioner did not contact an attorney or initiate legal or other action to collect on the note, did not take action to locate any corporate assets, and never attempted to restructure payment terms. Petitioner testified that he discussed the financial condition of the corporation with Ms. Martin, Ms. Miller, and Mr. Greenwell during 1981, and Mr. Greenwell advised him that it was "financially defunct." Petitioner testified that the "essentials" of his conversation during 1981 with Ms. Martin were that there were no conditions under which payments could be made to him on the note but that he had "totally" forgotten exactly what she had said. Petitioner believed that Ms. Martin resided in Houston at the end of 1981. He did not believe that she was taking steps to salvage the business and was not aware of Ms. Miller's doing so. Petitioner did not have any conversations with Ms. Martin or Ms. Miller after January 1982. Ms. Miller was called by respondent and testified that she was not aware of the note and thought petitioner was an investor who "put in some money into the corporation", but she did not handle financial matters related to the corporation and worked there only a short *97 time in 1981 (from February to May and for 2 weeks in August or September). Additionally, she testified that she was unaware of petitioner's responsibilities and he worked mostly with Ms. Martin. In response to cross-examination by petitioner's counsel as to whether the corporation was solvent in September 1981, she testified: "No. It was in bad shape." She told petitioner that it was "a big mess, as far as what I could see from the books." The corporation forfeited its right to do business on July 25, 1982, for failure to file its franchise tax report. On February 21, 1983, the State of Texas determined that there was a forfeiture of the corporation's charter for failure to pay franchise taxes. On the 1981 Federal income tax return filed by petitioner and his then wife, prepared by Mr. Greenwell, $ 10,000 is deducted as a "Bad debt" under "Miscellaneous Deductions". The deduction claimed was disallowed in the notice of deficiency on the grounds that it was not shown that it was expended or expended for the designated purpose, or alternatively, if it was a bad debt, it should have been treated as a short-term capital loss. In the petition, petitioner alleged that the $ 10,000 *98 was "a bona fide bad debt allowable as an ordinary deduction and not as a capital loss." The parties stipulated: "The outstanding issue relates to a bad debt deduction of $ 10,000.00 taken in 1981." In his opening statement at trial, petitioner's counsel stated that "all of the issues have been settled in this case, with the exception of whether or not Petitioner, Mr. Cutler, is entitled to a bad debt deduction under Section 166 for 1981" and "the evidence will show that Mr. Cutler is entitled to a bad debt deduction for 1981 or, alternatively, at a minimum, a short-term -- a long-term capital loss for that year." Subsequent to trial, petitioner filed a Motion for Leave to Amend Petition and Petitioner's First Amendment to Petition to Conform to the Evidence, which alleged as an alternative position that the corporation was a small business corporation as defined by section 1244(c)(3), and petitioner was a shareholder and thus entitled to a loss pursuant to section 1244 or 1222. Petitioner also made this alternative argument in his brief. Respondent filed a Notice of Objection to Motion for Leave to Amend Petition and a Motion to Strike the alternative argument from petitioner's *99 brief asserting that the issue was not timely raised and the record does not adequately support the position. OPINION Respondent contends that (1) the note was not a bona fide debt of the corporation but an equity investment or a payment to advance petitioner's relationship with Ms. Martin (presumably a gift); (2) if it was a debt, petitioner did not prove it became worthless in 1981; and (3) if it was worthless, it was not a business debt. Petitioner argues to the contrary, and further that, if the $ 10,000 was an equity investment, petitioner is entitled to a section 1244 small business stock loss or a short-term capital loss under section 1222. We agree with respondent that petitioner has not shown that the note represented a bona fide debt and conclude that it represented an equity investment which became worthless in 1981. In general, section 166(a) allows a deduction for any debt which becomes worthless within the taxable year. Section 166(d) provides that section 166(a) does not apply to a nonbusiness bad debt of a noncorporate taxpayer and treats a loss therefrom as a loss from the sale or exchange of a capital asset held for not more than 1 year. A nonbusiness bad *100 debt is defined as a debt other than a debt (1) created or acquired in connection with a trade or business of the taxpayer, or (2) the loss from the worthlessness of which is incurred in the taxpayer's trade or business. Sec. 166(d)(2). Ordinarily, when stock in a corporation becomes worthless, under section 165(g), the loss is treated as a capital loss. However, section 1244 provides that a loss on section 1244 stock is to be treated to a limited extent as ordinary loss. Only common stock qualifies as section 1244 stock. Sec. 1244(c)(1); sec. 1.1244(c)-1(b), Income Tax Regs.Section 1.1244(e)-1(a), Income Tax Regs., requires the corporation to maintain certain records relating to section 1244 stock. Section 1.1244(e)-1(b), Income Tax Regs., requires the shareholder to attach a statement to his return setting forth the address of the corporation, the manner of acquisition, and the nature and amount of the consideration paid. These regulations are in accordance with the broad mandate given respondent under section 1244(e). Petitioner bears the burden of persuasion and the burden of going forward with the evidence in this case. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). *101 As its guiding principle, the Court of Appeals for the Fifth Circuit, to which this case is appealable, normally classifies an advance as debt where there is an unconditional obligation to pay a sum certain on a set date but as a contribution to capital if repayment is contingent on the success of the business. Curry v. United States, 396 F.2d 630, 633 (5th Cir. 1968); see also United States v. Henderson, 375 F.2d 36, 39-40 (5th Cir. 1967). The factors generally considered are: "(1) the names given to the certificates evidencing the indebtedness; (2) the presence or absence of a maturity date; (3) the source of the payments; (4) the right to enforce the payment of principal and interest; (5) participation in management; (6) a status equal to or inferior to that of regular corporate creditors; (7) the intent of the parties; (8) 'thin' or adequate capitalization; (9) identity of interest between creditor and stockholder; (10) payment of interest only out of 'dividend' money; (11) the ability of the corporation to obtain loans from outside lending institutions." [Fn. ref. omitted.]
Plantation Patterns, Inc. v. Commissioner, 462 F.2d 712, 718-719 (5th Cir. 1972) *102 (quoting Montclair, Inc. v. Commissioner, 318 F.2d 38, 40 (5th Cir. 1963), affg. T.C. Memo. 1962-10), affg. T.C. Memo. 1970-182. This is a factual determination. Plantation Patterns, Inc. v. Commissioner, supra at 719. The instrument prepared here is designated as a note and provides a fixed payment schedule and a right to enforce payment. These factors support debt classification. However, petitioner testified that he understood that other creditors would be paid first if the corporation could not pay all of its debts, and the note did not clearly bear interest. See Curry v. United States, supra at 634. On balance, we conclude that the advance evidenced by the note was not bona fide debt. However, we are convinced that the advance was not a gift. An amount this significant is a far cry from a watch or gasoline credit card. Petitioner expected repayment [6] from corporate profits. We conclude that it was an equity investment and the note evidencing it constituted a security for purposes of section 165(g). *103 We reject petitioner's alternative contention that he is entitled to a loss on section 1244 stock. First, the issue was raised for the first time on brief and arguably prevented respondent from presenting evidence on the issue at trial. See DiLeo v. Commissioner, 96 T.C. 858, 891 (1991) affd. 959 F.2d 16 (2d Cir. 1992); Shelby U.S. Distributors, Inc. v. Commissioner, 71 T.C. 874, 885 (1979); Markwardt v. Commissioner, 64 T.C. 989, 997 (1975). Second, even if we were to consider this contention, petitioner has not demonstrated that the equity investment evidenced by the note was common stock, see sec. 1244(c)(1), or that he is entitled to the benefits of section 1244 inasmuch as he has not presented evidence relating to the corporate record keeping requirements of section 1.1244(e)-1(a), Income Tax Regs., or the requirement for a statement with his return required under section 1.1244(e)-1(b), Income Tax Regs., see Dwyer v. Commissioner, T.C. Memo. 1991-65; see also Magee v. Commissioner, T.C. Memo. 1993-305; *104 Cournan v. Commissioner, T.C. Memo. 1989-520. The question of whether an investment becomes worthless in a particular year is factual. Boehm v. Commissioner, 326 U.S. 287, 294 (1945); Genecov v. United States, 412 F.2d 556, 560 (5th Cir. 1969). The taxpayer must show that "'by some fixed and identifiable event or events, the stock became worthless in the year for which the deduction is claimed'". Genecov v. United States, supra at 560 (quoting 875 Park Ave. Co. v. Commissioner, 217 F.2d 699 (2d Cir. 1954), affg. a Memorandum Opinion of this Court). The question of worthlessness here is a very close one. Petitioner testified that he relied on Mr. Greenwell, his C.P.A. and the treasurer of the corporation, who advised him in 1981 that the corporation was "financially defunct" and collection efforts were pointless. However, he failed to call Mr. Greenwell as a witness to detail the financial status of the corporation in 1981 or to explain why he did not do so. This suggests that Mr. Greenwell's testimony would not support *105 petitioner's position. Wichita Terminal Elevator Co. v. Commissioner, 6 T.C. 1158, 1165 (1946), affd. 162 F.2d 513 (10th Cir. 1947). On the other hand, Ms. Miller, respondent's own witness, a principal in the corporation's business, its president and a shareholder, testified clearly that the corporation was insolvent and in "bad shape" in 1981 but acknowledged that she never handled financial matters. We conclude that petitioner sufficiently established the worthlessness of the note in 1981 through his testimony substantiated by Ms. Miller's testimony. Thus, we conclude that petitioner is entitled to a capital loss under sections 165(g) and 1211 in 1981. To reflect the parties' concessions and pending motions, An appropriate order will be issued and decision will be entered under Rule 155. Footnotes
1. All section references are to the Internal Revenue Code in effect for the year remaining in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated.↩
2. For 1981, petitioner and Rosemary C. Cutler filed a joint return. Petitioner testified that he was divorced some time after 1981. Mrs. Cutler is not a petitioner in this case.↩
3. The stipulation of facts states that decreases in the deduction for state sales tax for each tax year are computational and result from petitioner's concessions, and this adjustment also depends on our resolution of the above issue.↩
4. At trial, petitioner could not remember to whom the check was written but presumed it was the corporation.↩
5. Our reference to this instrument as a note is for convenience only and is not intended to be determinative of the issue of whether a valid debt existed.↩
6. Even if we were convinced that the advance was a debt, petitioner has not convinced us that this debt was business motivated. Petitioner's position is that the advance was made because of his status as an officer of the corporation. Yet petitioner testified that he was retired and he worked at most 2 to 3 hours per day for the corporation in its "start-up" phase. Ms. Martin was petitioner's girlfriend at the time. He has not shown us that his dominant motivation, see United States v. Generes, 405 U.S. 93↩ (1972), stemmed from his status as an officer of the corporation.