T.C. Memo. 1996-119

UNITED STATES TAX COURT

CHARLES KADLEC AND LESLEY C. KADLEC, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 22506-94.                Filed March 12, 1996.

<u>Lisa J. Steele</u>, for petitioners.

<u>Melanie M. Garger</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

RUWE, <u>Judge</u>:  Respondent determined a deficiency of $50,115 in petitioners' 1988 Federal income tax.  Respondent further determined an addition to tax pursuant to section 6651(a)(1)[1] in the amount of $12,529.

_____

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the taxable year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

After concessions,[2] the sole issue remaining for decision is whether petitioners are entitled to a bad debt deduction of $182,451.03 for the 1988 taxable year.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and attached exhibits are incorporated herein by this reference. Petitioners resided in Acton, Massachusetts, at the time they filed their petition.

Petitioners are the owners of Stow Laboratories, Inc. (SLI), a closely held Massachusetts corporation with its principal place of business in Hudson, Massachusetts. SLI has been engaged in the manufacturing and sale of electrical equipment since it was incorporated on April 4, 1973. Mr. Kadlec is the president and treasurer of SLI as well as a director and full-time employee. He owns 80 percent of SLI's stock. Mrs. Kadlec is the vice president, clerk, and a director, and she owns the remaining 20 percent of SLI's stock. From 1973 to the date of trial, petitioners made capital contributions to SLI in the total amount of $250.

---

[2]At trial, petitioners conceded the addition to tax pursuant to sec. 6651(a)(1) for delinquent filing of their 1988 Federal income tax return.

Advances to SLI

From 1978 through 1982, Yana Kadlec, Mr. Kadlec's mother, made the following advances to SLI:

| Amount | Date of Note | Maturity Date | Interest Rate |
|--------|--------------|---------------|---------------|
| $20,000 | 3/14/78 | 3/24/79 | 11% per annum |
| 10,000 | 10/15/79 | 10/24/80 | 17% per annum |
| 10,000 | 1/30/80 | 1/24/81 | 18% per annum |
| [1]40,000 | 1/24/82 | 1/24/83 | 15% per annum |

[1]Petitioners allege that this note is a renewal of the previous three notes from Yana Kadlec.

Yana Kadlec died on May 13, 1983. SLI never repaid the principal due under any of these notes to Yana Kadlec or to her heirs or assignees.

From 1979 through 1983, SLI borrowed various sums from Hudson National Bank (Hudson National) of Hudson, Massachusetts. Most of the borrowing was in the form of 90-day demand notes. In addition, on November 20, 1980, SLI borrowed $20,000 from Hudson National pursuant to a 3-year collateral note. Hudson National required Mr. Kadlec to guarantee these notes. On April 22, 1981, SLI's board of directors ratified Hudson National's 3-year loan. The corporate minutes indicate that Hudson National required Mr. Kadlec to personally countersign the borrowing. All notes from Hudson National were paid in full by November 1983.

During each of the years 1981 through 1990, Mr. Kadlec advanced funds to SLI to enable it to meet its payroll and current operating expenses.  At the end of each year, the unpaid balance of the advances was totaled and memorialized in an interest-bearing promissory note.  Between 1981 and 1985, Mr. Kadlec advanced the following amounts to SLI:

| Amount | Date of Note | Maturity Date | Interest Rate |
|---|---|---|---|
| $56,090.32 | 12/31/81 | 12/31/84 | 15% per annum |
| 17,664.76 | 12/31/82 | 12/31/85 | 15% per annum |
| 74,512.89 | 12/31/83 | 12/31/85 | 13% per annum |
| 5,111.07 | 12/31/84 | 12/31/86 | 13% per annum |
| 29,071.99 | 12/31/85 | 12/31/87 | 12% per annum |

The average bank prime rates for the periods at issue were as follows:

| Year | Interest Rate |
|---|---|
| 1981 | 18.87% per annum |
| 1982 | 14.86% per annum |
| 1983 | 10.79% per annum |
| 1984 | 12.04% per annum |
| 1985 | 9.93% per annum |

Mr. Kadlec's 1981 and 1982 advances were subordinated to the then-outstanding Hudson National 3-year loan executed on November 20, 1980.  On April 20, 1982, at a special meeting of SLI's board of directors, the board ratified Mr. Kadlec's 1981 advance.  The corporate minutes state that funds needed by SLI to continue operations while SLI developed new products had become impossible

to obtain from banks without Mr. Kadlec's accompanying personal guarantee.  In addition, at a special meeting on May 6, 1986, SLI's board ratified Mr. Kadlec's 1985 advance.  The corporate minutes indicate that Mr. Kadlec's advance was necessary, because no other sources of funds were available.  SLI has never made any payments of principal or interest to Mr. Kadlec pursuant to these notes.

From 1984 through 1987, SLI subleased office space to Datatrol, producing rental income as follows:

| Year | Rental Income |
|------|---------------|
| 1984 | $31,033.31 |
| 1985 | 65,218.95 |
| 1986 | 62,008.39 |
| 1987 | 32,168.17 |

Mr. Kadlec believed that his advances to SLI would be repaid out of profits generated by product sales and from rental income received from Datatrol.  The sublease with Datatrol ended in August 1987, and SLI was unable to find another subtenant until 1990.

On March 15, 1988, at a special meeting of SLI's board of directors, the board declared Mr. Kadlec's promissory notes for 1981 through 1985 worthless.  However, at the same meeting, the board ratified a note dated December 31, 1987, to Mr. Kadlec in the amount of $43,900 for money that SLI had borrowed from Mr. Kadlec.  Mr. Kadlec also made additional advances subsequent to

the March 15, 1988, meeting.  These include a $77,000 advance in 1988, an $84,400 advance in 1989, and a $19,350 advance in 1990. SLI has made no payments on any of these advances.

SLI was a going concern in 1988 and has continued as such through the time of trial.

Petitioners claimed the 1981 through 1985 advances as "short-term capital losses" on Schedule D of their 1988 Federal income tax return.  SLI did not file a U.S. Corporate Tax Return (Form 1120) for the taxable year 1988 and, therefore, did not report any cancellation of indebtedness income as a result of these alleged canceled debt obligations.

OPINION

The only issue for decision is whether petitioners may deduct $182,451.03 in 1988 as a bad debt under section 166.[3] Section 166(a) allows taxpayers a deduction for any bona fide debt which becomes worthless in the taxable year.  A bona fide debt is a debt that arises from a debtor-creditor relationship based upon a valid and enforceable obligation to pay a fixed or

---

[3]Petitioners claimed a short-term capital loss deduction on Schedule D of their 1988 Federal income tax return, alleging that the loans constituted nonbusiness bad debts.  Sec. 166(d) distinguishes between business and nonbusiness bad debts.  If the loss arises from a business debt, it may be deducted in full against ordinary income; if the loss arises from a nonbusiness debt, it is treated as a short-term capital loss.  Sec. 166(a), (d).  On brief, petitioners now argue that the loans were, in fact, business bad debts.

determinable sum of money.  Sec. 1.166-1(c), Income Tax Regs.
This is in contrast to a contribution to capital or equity
investment, which is not considered debt for purposes of section
166.  Kean v. Commissioner, 91 T.C. 575, 594 (1988); sec. 1.166-
1(c), Income Tax Regs.  Respondent determined that Mr. Kadlec's
advances to SLI constituted capital contributions as opposed to
loans.  Respondent's determination is presumed correct, and
petitioners bear the burden of proving otherwise.  Rule 142(a);
Welch v. Helvering, 290 U.S. 111 (1933); Dixie Dairies Corp. v.
Commissioner, 74 T.C. 476, 493 (1980).

The characterization of advances to a corporation by a
shareholder is a question of fact to be determined from all the
facts and circumstances.  Gilbert v. Commissioner, 262 F.2d 512,
513 (2d Cir. 1959), affg. T.C. Memo. 1958-8; Georgia-Pacific
Corp. v. Commissioner, 63 T.C. 790, 795 (1975).  Courts have
considered the following nonexclusive list of factors in
determining whether advances, such as those involved in the
instant case, are loans or equity investments:

> (1) the intent of the parties; (2) the identity between
> creditors and shareholders; (3) the extent of
> participation in management by the holder of the
> instrument; (4) the ability of the corporation to
> obtain funds from outside sources; (5) the "thinness"
> of the capital structure in relation to debt; (6) the
> risk involved; (7) the formal indicia of the
> arrangement; (8) the relative position of the obligees
> as to other creditors regarding the payment of interest
> and principal; (9) the voting power of the holder of
> the instrument; (10) the provision of a fixed rate of

interest; (11) a contingency on the obligation to repay; (12) the source of the interest payments; (13) the presence or absence of a fixed maturity date; (14) a provision for redemption by the corporation; (15) a provision for redemption at the option of the holder; and (16) the timing of the advance with reference to the organization of the corporation. [Fin Hay Realty Co. v. United States, 398 F.2d 694, 696 (3d Cir. 1968); fn. ref. omitted.]

These factors are only aids to be used in determining whether the investment constitutes debt or equity. Id. at 697. The touchstone of economic reality is whether "an outside lender would have made the payments in the same form and on the same terms." Segel v. Commissioner, 89 T.C. 816, 828 (1987). If the advances "were far more speculative than what an outsider would make, the payments would be loans in name only." Id. (citing Fin Hay Realty Co. v. United States, 398 F.2d at 697).

In making our determination, we recognize that heightened judicial scrutiny is appropriate when shareholders make advances to their closely held corporations. As the Court of Appeals for the Third Circuit noted in Fin Hay Realty Co. v. United States, supra at 697:

Where the corporation is closely held * * * and the same persons occupy both sides of the bargaining table, form does not necessarily correspond to the intrinsic economic nature of the transaction, for the parties may mold it at their will with no countervailing pull. This is particularly so where a shareholder can have the funds he advances to a corporation treated as corporate obligations instead of contributions to capital without affecting his proportionate equity interest. * * *

We find that petitioners have failed to carry their burden of proof.  Our analysis of the advances at issue under the factors listed above convinces us that these advances were contributions to capital rather than loans.

Formal Indicia of the Arrangement

On brief, respondent concedes that Mr. Kadlec's advances possessed the formal indicia of loans.  The advances were memorialized by promissory notes specifying the payment of a sum certain at a fixed maturity date with interest and providing Mr. Kadlec with the right to enforce payments.  However, allegedly objective economic indicia of debt, such as consistent bookkeeping and consistent financial reporting on balance sheets, are little more than additional declarations of intent, without accompanying objective economic indicia of debt.  Dixie Dairies Corp. v. Commissioner, 74 T.C. at 495 (citing Alterman Foods, Inc. v. United States, 505 F.2d 873, 879 (5th Cir. 1974)).  In the instant case, the formal indicia surrounding Mr. Kadlec's advances are overcome by other factors that establish that, as a matter of economic reality, Mr. Kadlec's advances were capital contributions.

Inability of SLI to Obtain Funds from Outside Sources

In Segel v. Commissioner, 89 T.C. at 832, we explained that the focus of this factor "is not simply on the ability of a corporation to obtain the funds from outside sources; rather, the focus is whether an outside lender would have lent the funds on the same or similar terms." The record in this case clearly establishes that an independent outside lender would not have made the same advances to SLI as did Mr. Kadlec. The corporate minutes from a special meeting of SLI's board of directors on April 22, 1981, state that Hudson National required Mr. Kadlec to personally countersign the borrowing. In addition, corporate minutes from meetings of SLI's board of directors on April 20, 1982, and May 6, 1986, indicate that advances from Mr. Kadlec were necessary, because SLI no longer had any outside sources available for borrowing. Presence of this factor indicates that the advances were contributions to capital.

The Risk Involved

Advances by a shareholder that are placed at the risk of the corporation's business are likely to be considered contributions to capital. Nassau Lens Co. v. Commissioner, 308 F.2d 39, 47 (2d Cir. 1962), remanding 35 T.C. 268 (1960); Gilbert v. Commissioner, 248 F.2d 399, 406-407 (2d Cir. 1957), remanding

T.C. Memo. 1956-137; Peraino v. Commissioner, T.C. Memo. 1982-524, affd. without opinion 742 F.2d 1437 (2d Cir. 1983). Petitioners stipulated that Mr. Kadlec anticipated repayment of his advances would come out of the profits from product sales and, for the 1984 and 1985 advances, from the rental income generated from the sublease with Datatrol. Thus, Mr. Kadlec did not enjoy an expectation of repayment, regardless of the success of the business. Gilbert v. Commissioner, supra at 406. This is an additional factor pointing to a finding that the advances constituted contributions to capital rather than loans.

Thin Capitalization

A corporation's debt-to-equity ratio compares the corporation's total liabilities to its stockholders' equity. Development Corp. of Am. v. Commissioner, T.C. Memo. 1988-127. Examining the debt-to-equity ratio enables us to determine whether a corporation is so thinly capitalized that a business loss would result in an inability to repay the advance. Such thin capitalization would be indicative of a capital contribution rather than a loan. Bauer v. Commissioner, 748 F.2d 1365, 1369 (9th Cir. 1984), revg. T.C. Memo. 1983-120. Despite numerous judicial opinions on this issue, no clear cut set of standards or agreed-upon mathematical formula exists to determine whether or

not a corporation is thinly capitalized for Federal income tax purposes.  Development Corp. of Am. v. Commissioner, supra.

According to petitioners' expert, Robert J. Erickson, SLI's debt-to-equity ratios for the years ending December 31, 1981 through 1985, were as follows:

| December 31 | Debt | Equity |
|---|---|---|
| 1981 | 6.647620 to 1.000000 | |
| 1982 | negative equity | |
| 1983 | negative equity | |
| 1984 | negative equity | |
| 1985 | negative equity | |

We believe that SLI's debt-to-equity ratios for these years, coupled with the fact that petitioners' total capital contribution since 1973 was only $250, indicate that SLI was thinly capitalized.  Such thin capitalization suggests that the advances were equity investments.

Subordination

Whether the advances have a status equal to or inferior to that of regular corporate creditors is of some importance in determining whether Mr. Kadlec was dealing as a shareholder or as a creditor.  United States v. Henderson, 375 F.2d 36, 40 (5th Cir. 1967); Nassau Lens Co. v. Commissioner, 308 F.2d at 47.  In the present case, Mr. Kadlec's advances to SLI in 1981 and 1982 were subordinated to the then-outstanding 3-year loan from Hudson

National that was executed on November 20, 1980.  This factor indicates that the advances were capital contributions.

Interest Payments

A bona fide lender is concerned with interest.  <u>National Carbide Corp. v. Commissioner</u>, 336 U.S. 422, 435 n.16 (1949); <u>Curry v. United States</u>, 396 F.2d 630, 634 (5th Cir. 1968). Mr. Kadlec's purported debt instruments contained provisions for interest.  However, SLI has never paid interest (or principal) on any of the advances in issue.  The fact that Mr. Kadlec continued to advance funds, despite SLI's failure to make any interest (or principal) payments due on these advances, suggests that Mr. Kadlec made an equity contribution.

Our review of the record convinces us that an outside creditor would not have made the advances in issue to SLI.  <u>Segel v. Commissioner</u>, 89 T.C. 816, 828 (1987).  We conclude that these advances were contributions to capital as opposed to bona fide debts; therefore, petitioners are not entitled to a bad debt deduction for 1988.[4]

---

[4]We note that even if the advances were loans, petitioners would still not be entitled to a bad debt deduction, because they have not proven that the advances became worthless in 1988. <u>Mueller v. Commissioner</u>, 60 T.C. 36, 41 (1973), affd. in part, revd. in part and remanded 496 F.2d 899 (5th Cir. 1974).  Mr. Kadlec continued to advance funds to SLI, which has continued as a going concern. Where a debtor company continues to operate as a
(continued...)

Accordingly, respondent's determination is sustained.

Decision will be entered

for respondent.

---

[4](...continued)
going concern, courts often have concluded that its debts are not worthless for Federal income tax purposes.  Roth Steel Tube Co. v. Commissioner, 620 F.2d 1176, 1182 (6th Cir. 1980), affg. 68 T.C. 213 (1977).